UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case No.  3:06-cr-92-J-33MCR

TERRANCE TUCKER
_____/

**ORDER**

This matter comes before the Court on consideration of United States Magistrate Judge Monte C. Richardson's Report and Recommendation (Doc. # 37), entered on May 12, 2006, recommending that Defendant's Second Motion to Suppress Evidence (Doc. # 33) be denied.  Defendant filed a timely objection to the Magistrate Judge's Report and Recommendation (Doc. # 39) and the Government has filed a response in opposition to Defendant's objection (Doc. # 40).

**I.   Legal Standard**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  In the absence of specific objections, there is no requirement that a district judge review factual findings de novo.  Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).  However, a district judge must make a de

novo determination of those portions of the report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). District judges must "give fresh consideration to those issues to which specific objections have been made by a party." Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(internal citations omitted). The district judge reviews legal conclusions de novo, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994).

## II. Analysis

Defendant filed his Second Motion to Suppress Evidence (Doc. # 33) on April 23, 2006. Defendant seeks to suppress 260 grams of cocaine and $18,400.00 in cash found by police officers in a backpack located in the car Defendant was driving on January 24, 2006. Defendant also seeks to suppress several firearms found at Defendant's residence, as the police officers searched Defendant's home, with the consent of Defendant's spouse, after Defendant's arrest. Essentially, Defendant asserts that the police officers lacked probable cause to stop Defendant's vehicle on January 24, 2006, that the police officers inappropriately detained and questioned Defendant at the time of the stop, that the police officers improperly searched Defendant's vehicle, and that all

evidence obtained as a result of the alleged unconstitutional activities above should be suppressed.  In addition, Defendant argues that all evidence obtained during a search of his home should be suppressed as fruit of the poisonous tree.

After conducting an evidentiary hearing, United States Magistrate Judge Monte C. Richardson entered a detailed Report and Recommendation (Doc. # 37) in which he recommended that Defendant's Second Motion to Suppress Evidence (Doc. # 33) be denied.[1]  At the evidentiary hearing, the government presented the testimony of three law enforcement officers: Detective Charles Bates, Patrol Officer David Border, and Officer Edward Sullivan.  In addition, the Court admitted into evidence a video from Officer Border's dashboard video camera that depicted the events in question.

In his motion to suppress, Defendant asserts that the cocaine, cash, and firearms should be suppressed because (1) the officers did not have probable cause to believe a crime had been committed and thus did not have probable cause to effect a traffic stop; (2) the Defendant was impermissibly detained and questioned without reasonable suspicion to do so; (3) the arrival of the K-9 unit and subsequent dog sniff impermissibly extended the scope of the detention; (4) the officers undertook an unconstitutional search of the vehicle by physically entering it without probable cause; and

---

[1] A transcript of the April 26, 2006, evidentiary hearing has been filed at Doc. # 36.  All references to the transcript will be hereinafter designated by the abbreviation "Tr."

(5) the firearms retrieved from Defendant's home were the fruits of the poisonous tree. (Doc. # 33 at 1-2).

The Magistrate Judge addressed each of Defendant's arguments in the Report and Recommendation. Relying on the evidence and testimony presented at the hearing, the Magistrate Judge determined that the traffic stop was proper. Further, the Magistrate Judge found that the stop of the vehicle Defendant was driving was valid because Officer Border had probable cause to believe a traffic violation, speeding, had occurred. In addition, the Magistrate Judge determined that the officers had an independent basis to effect an investigative stop based on reasonable suspicion that Defendant had been involved in criminal drug activity.

As to Defendant's argument that he was improperly detained and questioned without reasonable suspicion, the Magistrate Judge determined that the officers complied with the mandate of Terry v. Ohio, 392 U.S. 1 (1968) and other binding precedent and that "the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. Accordingly, the detention of Defendant in order to permit the K-9 unit to perform the sniff was reasonable." (Doc. # 37 at 13).

As noted, Defendant argues that the officers improperly searched Defendant's car. Specifically, Defendant asserts that the officers completed three separate searches of Defendant's car:

-4-

first, when Detective Bates stuck his head in Defendant's car and looked around; second, when Detective Bates peered into the driver's side window; and third, when Detective Bates retrieved the backpack from the car after the K-9 unit performed the dog sniff of the vehicle. The Magistrate Judge discussed the searches in detail and finally concluded that "the evidence seized from the car should not be suppressed as its discovery was not the result of any illegal police activity but rather a lawful canine sniff." (Doc. # 37 at 17).

The Magistrate Judge also determined that the firearms should not be suppressed because they were recovered after Defendant's spouse granted the officers consent to search the home.

### A. **Defendant's Objections to the Report and Recommendation**

Defendant raises the following objections to the Report and Recommendation of the Magistrate Judge:

> Defendant specifically objects to both bases for the Magistrate's determination of the validity of the stop. Defendant specifically objects to the Magistrate's use of information derived from a confidential informant as a basis for a finding of both reasonable suspicion and probable cause, without an examination of said informant's reliability, credibility, motive, or presence or absence of corroboration, and without allowing defense counsel to question even the officers regarding the same. Defendant specifically objects to the Magistrate's determination that the officers' detention and questioning of Defendant did not violate the Fourth Amendment. Defendant specifically objects to both bases for the Magistrate's determination that Detective Bates's conceded search of the vehicle does not mandate suppression of the evidence. Defendant specifically objects to the Magistrate's determination that the

> firearms found at Defendant's home should not be suppressed as fruit of the poisonous tree.

(Doc. # 39 at 1-2).

### 1. Validity of the Stop and use of Confidential Informant

Defendant objects to the Magistrate Judge's finding that probable cause supported the stop of Defendant's vehicle because Officer Border determined that Defendant was speeding. Defendant questions Officer Border's method of "pacing" Defendant's vehicle and also questions Officer Border's use of radar. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). As correctly argued by the Government, the Magistrate Judge properly relied on the unrefuted testimony offered by Officer Border that Defendant was, indeed, speeding. The Magistrate Judge properly determined that Officer Border's testimony was credible and properly determined that "Officer Border had probable cause to believe Defendant was violating a traffic law by speeding, and therefore, the traffic stop itself was proper." (Doc. # 37 at 8). The Magistrate Judge's determination that Officer Border had probable cause to stop Defendant's vehicle is affirmed.

Defendant also objects to the Magistrate Judge's secondary reasoning in support of the validity of the stop: that the officers had a reasonable suspicion that Defendant was involved in criminal

drug activity, thus justifying an investigative stop. Defendant argues that the officers relied upon information from a confidential informant and that Defendant was denied the opportunity to question the officers about the reliability of the confidential informant.

The Magistrate Judge's Report and Recommendation summarizes the bases for the officers' reasonable suspicion that Defendant was engaged in illegal activities:

> Here, Detective Bates had a reasonable suspicion that Defendant had engaged in a drug transaction at a hotel. Through a confidential informant, Detective Bates learned that Christopher Lowe was dealing cocaine. Based on the information provided by the confidential informant, Detective Bates was able to seize some of the cocaine sold by Mr. Lowe. The confidential informant told Detective Bates numerous locations where Mr. Lowe received his cocaine and of these locations was the home of Defendant. Detective Bates also personally observed Defendant enter a hotel room in which Mr. Lowe was located and in which another known drug dealer, Lonnie Lewis, had recently entered. Finally, Detective Bates observed Defendant leave the hotel room with a backpack.

(Doc. # 37 at 9)(internal citations omitted).

As explained by the Magistrate Judge and as argued by the Government in response to Defendant's objections to the Report and Recommendation, Detective Bates and Detective Nixon gathered reliable information about Defendant, through surveillance and other means, prior to the stop of Defendant's vehicle. During the hearing, Detective Bates explained that a confidential informant provided information about a drug dealer, Christopher Lowe, and the investigation of Mr. Lowe led the officers to Defendant Tucker.

-7-

During the hearing, Detective Bates explained some of the activities the officers engaged in to corroborate the information provided by the confidential informant:

> Q: And what information, in general, did the confidential informant provide to you about the drug activities of Christopher Lowe?
> A: She provided a list of names and individuals that he was involved with. They were trafficking or selling trafficking quantities of cocaine in the Jacksonville area.
> Q: Now, did the confidential informant continue to give you additional information as time went on prior to January 24th?
> A: Yes ma'am.
> Q: And did the cooperating individual – did you meet with the cooperating individual in person?
> A: On numerous occasions.
> Q: And what did you do to corroborate the information the confidential informant had given you?
> A: We actually made some recorded phone calls, numerous surveillances, and then actually made cocaine seizures with this confidential informant.

(Tr. 8:21-25, 9:1-16).

It should be further noted that, although Defendant objects to the Magistrate Judges' ruling concerning the confidential informant's involvement as a basis for the officers' reasonable suspicion, Defendant has not formally moved to compel the Government to reveal the identity of the confidential source.[2]

---

[2] The Eleventh Circuit case of United States v. Young, 161 Fed. Appx. 922, 926-27 (11th Cir. 2006), explains:

> The government enjoys a limited privilege to withhold from disclosure the identity of its informants. However, if disclosure is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. . . . The Eleventh
> (continued...)

In addition, during the hearing, Detective Bates was asked, "Now, at that point when you had put the Defendant into the back of Officer Border's patrol car, at that point, what did you believe was going on?" and Detective Bates answered: "I believed a drug transaction had occurred." (Tr. 33:18-23). When further questioned, Detective Bates explained: "Due to the information we received and the surveillance we were doing, the individuals that were at the hotel room, his [Defendant's] response that he was coming from his . . . a girl's house. . . . The way he was trying to evade us [the police] when we got behind him." (Tr. 33:1, 34:1-6).

The evidence supports the Magistrate Judge's determination that the officers had reasonable suspicion that Defendant was engaged in criminal drug activity, justifying the stop of Defendant's vehicle. The Magistrate Judge's findings and conclusions on this point are affirmed.

### 2. The Officers' Questioning of Defendant

Defendant objects to the Magistrate Judge's determination that Defendant was lawfully questioned during the traffic stop.

---

[2](...continued)
Circuit has focused on . . . (1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in nondisclosure.

(Internal citations and quotations omitted).

Defendant maintains that, contrary to the Magistrate's recommendation, it was improper for the officers to question Defendant about where Defendant was coming from and the location of the backpack. Defendant argues that, since Defendant was stopped for speeding, a traffic violation, the officers' questions should have been limited to the traffic violation.

Defendant's objection is unfounded. The Eleventh Circuit has ruled that police officers may question individuals stopped for traffic violations on issues unrelated to the traffic stop in limited situations. In United States v. Hernandez, 418 F.3d 1206, 1209 (11th Cir. 2005), the court ruled:

> The United States Supreme Court holds that it is unreasonable extensions of the duration -- not the scope of conversation -- that could render an otherwise justified detention unreasonable for Fourth Amendment purposes. Mere police questioning does not constitute a seizure, -- even if such questioning is about a topic unrelated to the initial purpose of the search or seizure -- so long as it does not prolong the time reasonably required to complete that initial mission.

(Citing Muehler v. Mena, 544 U.S. 93, 101 (2005)).

The Eleventh Circuit has further explained:

> Where the initial stop was legal, the officer had the duty to investigate suspicious circumstances that then came to his attention. We note that as each answer to the Trooper's investigative questions failed to allay his concerns, the Trooper's reasonable suspicion was bolstered, thus justifying his continuing to detain defendant, his call for the dog, and his request to search the truck.

Hernandez, 418 F.3d at 1211.

Furthermore, United States v. Ffriend, 151 Fed. Appx. 778, 779 (11th Cir. 2005) holds, "[D]uring a legal stop, an officer may ask questions, including questions not strictly related to the traffic stop, while waiting for a computer check of registration or examining a driver's license." This further questioning is not unlimited, but is permissible in cases akin to the present, where the officers have "an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." Id.

In this case, the officers had reasonable suspicion that Defendant was engaged in illegal drug activity and were justified in asking Defendant where he was driving from and the location of the backpack. Defendant's answers to both of these questions were untrue, heightening the officers' reasonable suspicion.

The Magistrate Judge's determination that Defendant was questioned appropriately is thus affirmed.

### 3.  **Defendant's Detention**

In addition, Defendant argues that, contrary to the Magistrate Judge's recommendation, Defendant was detained for an unconstitutionally long time.

Defendant's objections concerning the length of the detention are overruled as well. It is not contested that the K-9 unit arrived twenty-four minutes after Defendant was stopped. Twenty-four minutes is reasonable and consistent with the Supreme Court's mandate in Florida v. Royer, 460 U.S. 491, 500 (1983) that "an

investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."

In Hernandez, the Defendant was detained for seventeen minutes and sought to suppress evidence on the grounds that he was detained for an unconstitutional duration. 418 F.3d at 1211.  The Eleventh Circuit upheld the seventeen minute detention as follows:

> [A]t a traffic stop, the police can occasionally pause for a moment to take a breath, to think about what they have seen and heard, and to ask a question or so.  The police are authorized to detain traffic violators for a *reasonable* amount of time. . . .  No evidence in the record shows that seventeen minutes is significantly longer than the range of normal for a traffic stop for a moving violation.  Even if seventeen minutes is some minutes longer than the norm, we question whether the Fourth Amendment's prohibition of unreasonable seizures is concerned with such trifling amounts of time, when the seizure was caused at the outset by an apparent violation of the law.

Id. at 1212.

Further, in United States v. Hardy, 855 F.2d 753, 761 (11th Cir. 1988), the Eleventh Circuit held that a investigative stop of a fifty minute duration was not unreasonable.

In this case, the Magistrate Judge correctly determined that the twenty-four minute stop was reasonable.  The Magistrate Judge is affirmed on this issue.

### 4. **Detective Bates's Search of Defendant's Vehicle**

Defendant specifically objects to both bases for the Magistrate Judge's determination that Detective Bates's search of the vehicle does not mandate suppression of the evidence.

-12-

The Magistrate Judge determined that, "[w]hen Remington alerted to the presence of narcotics, the officers had probable cause to search the vehicle. . . . The more difficult issue is whether the first two searches violated the Fourth Amendment and if so, whether they so tainted the acquisition of the evidence that it must be excluded." (Doc. # 37 at 14). After thoroughly evaluating the arguments of counsel and the testimony presented at the hearing, the Magistrate Judge determined that the initial searches of Defendant's vehicle did not constitute a violation of the Fourth Amendment. Specifically, the Magistrate Judge determined that Detective Bates did not violate the Fourth Amendment by peering into the window of the vehicle. This conclusion is supported by <u>Texas v. Brown</u>, 460 U.S. 730 (1983)("There is no expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passerby or diligent police officer.") The Magistrate Judge's analysis of Detective Bates's act of peering into the window of Defendant's vehicle is affirmed.

The Magistrate Judge also determined that, when Detective Bates stuck his head into Defendant's vehicle and looked around, Detective Bates conducted a search of Defendant's vehicle. The Magistrate Judge indicated that probable cause existed to perform the warrantless search because Detective Bates reasonably believed that the automobile contained contraband, and the automobile

exception to the warrant requirement permits law enforcement to seize and search an automobile without a warrant if "probable cause exists to believe it contains contraband." Pa. v. Labron, 518 U.S. 938, 940 (1996). This Court affirms's the Magistrate Judge's determination that the warrantless search of Defendant's vehicle was proper.

In addition, the Magistrate Judge determined that the canine sniff provided probable cause to search the vehicle, which was totally independent of Detective Bates's search of the vehicle: "In this case, the officers did not obtain the evidence as a result of Detective Bates's first search. Detective Bates did not even locate the backpack during this first search. Instead, the officers had an 'independent source' of probable cause to search the vehicle: the positive alert to narcotics by Remington [the K-9]." (Doc. # 37 at 16). This Court agrees that, even if Detective Bates's search could be considered unlawful by a reviewing court, the canine sniff provided probable cause for the search and seizure of the contraband independent of Detective Bates's activities.

The Magistrate Judge's analysis of each aspect of the search of Defendant's vehicle is affirmed.

### 5. **Search of Defendant's Residence**

Defendant objects to the Magistrate Judge's determination that the firearms located at Defendant's home should not be suppressed and are not fruits of the poisonous tree.

-14-

This Court has affirmed the Magistrate Judge's determination that the stop and search of Defendant's vehicle was lawful and that the cocaine and cash were lawfully recovered. There is no poisonous tree in this case. The firearms in this case were recovered in Defendant's home pursuant to a lawful search. It is not contested that Defendant's spouse, Latonya Tucker, gave the officers permission to search the residence. During the hearing, Detective Bates was asked about the search of Defendant's home and indicated that Defendant's spouse gave full consent to the search:

> Q: And who did you come into contact with?
> A: Latonya Tucker.
> Q: Did you speak with her?
> A: Yes, ma'am, I did.
> Q: What did you tell her?
> A: We advised her that her husband had been arrested on a drug violation and asked for consent to search the residence.
> Q: Now, that day, were you dressed in–how were you dressed?
> A: We were in plainclothes.
> Q: And what tone of voice did you use with her?
> A: We were nice to her. I mean, she was very cooperative.
> Q: And did anybody have weapons drawn?
> A: No, ma'am.
> . . . .
> Q: Did she appear to be coherent?
> A: Yes ma'am.
> . . . .
> Q: And what did you ask for her permission to do?
> A: To search the residence.
> . . . .
> Q: Did she give you consent to search the entire residence?
> A: Yes, ma'am.
> . . . .
> Q: And what did you find in the master bedroom?
> A: There was a shotgun . . . and a semiautomatic pistol . . . .

(Tr. 42:5-25, 43:4-16, 44:2-5).

Because the search leading to Defendant's arrest was lawful and because Defendant's spouse consented to the search of the residence, the search of the residence was lawful and the Magistrate Judge's determination that the firearms should not be suppressed is affirmed.

### III. Conclusion

After conducting a careful and complete review of the findings, conclusions and recommendations, and giving de novo review to matters of law, the Court accepts the factual findings and legal conclusions of the Magistrate Judge, and the recommendation of the Magistrate Judge regarding the motion.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) United States Magistrate Judge Monte C. Richardson's Report and Recommendation (Doc. # 37), recommending that Defendant's Second Motion to Suppress Evidence (Doc. # 33) be denied is **ACCEPTED** and **ADOPTED**.

(2) Defendant's Second Motion to Suppress Evidence (Doc. # 33) is **DENIED.**

(3) Defendant's objections to the Magistrate Judge's Report and Recommendation (Doc. # 39) are **OVERTURNED**.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 5th day of June, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record